## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NANCY CRISMAN | * |
| 8339 Forrester Boulevard | * |
| Springfield, VA  22152, | * |
| | * |
| and | * |
| | * |
| NATIONAL SECURITY COUNSELORS | * |
| 1200 South Courthouse Road, Suite 124 | * |
| Arlington, VA  22204, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| DEPARTMENT OF JUSTICE | * |
| 950 Pennsylvania Avenue, NW | * |
| Washington, DC  20530, | *   Civil Action No. 1:12-cv-01871 |
| | * |
| and | * |
| | *   **COMPLAINT** |
| BOARD OF GOVERNORS OF THE | * |
| FEDERAL RESERVE SYSTEM | * |
| 20th & Constitution Avenue, NW | * |
| Washington, DC  20551, | * |
| | * |
| and | * |
| | * |
| DEPARTMENT OF HOMELAND | * |
| SECURITY | * |
| Washington, DC  20528, | * |
| | * |
| and | * |
| | * |
| OFFICE OF THE DIRECTOR OF | * |
| NATIONAL INTELLIGENCE | * |
| Washington, DC  20511, | * |
| | * |
| Defendants. | * |
| | * |

*     *     *     *     *     *     *     *     *     *     *     *     *

## COMPLAINT

Plaintiffs Nancy Crisman and National Security Counselors bring this action against Defendants Department of Justice, Board of Governors of the Federal Reserve System, Department of Homeland Security, and Office of the Director of National Intelligence pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Privacy Act, 5 U.S.C. § 552a, *et seq.* (collectively "FOIA/PA"), the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, the Fifth Amendment of the United States Constitution, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(1) and 28 U.S.C. § 1331.

## VENUE

2.      Venue is appropriate under 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(5), 703 and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Nancy Crisman ("Crisman") is a U.S. citizen and is a resident of the Commonwealth of Virginia.

4.      Plaintiff National Security Counselors ("NSC") is a non-profit organization under the laws of the Commonwealth of Virginia and has the ability to disseminate information on a wide scale.

5.      Defendant Department of Justice ("DOJ") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records which are the subject of this action.

6.      The Federal Bureau of Investigation ("FBI"), Justice Management Division ("JMD"), National Security Division ("NSD"), and Office of Information Policy ("OIP") are DOJ components.

7.      Defendant Board of Governors of the Federal Reserve System ("FRB") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records which are the subject of this action.

8.      Defendant Department of Homeland Security ("DHS") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records which are the subject of this action.

9.      Defendant Office of the Director of National Intelligence ("ODNI") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records which are the subject of this action.

## BACKGROUND

10.     In 2004 Crisman was employed as a nurse by Corporate Nurse, Inc. ("CNI"), a federal government contractor.  Crisman was stationed at FRB Headquarters.

11.     On 26 March 2004 the Florida-based Financial Institution Security Association sent a document with the heading "FISA Alert Report Form" to FBI's Miami Field Office regarding Crisman.  It was marked "CONFIDENTIAL" by an unknown source to reflect the fact that it included confidential personal information, such as Crisman's Social Security Number and

Date of Birth.  This document was marked by FBI as Serial 2974 and placed in File 66F-MM-A55222.  This document will hereinafter be referred to as the "FISA Alert."

12.     The FISA Alert did not identify Crisman as a suspect in any criminal activity.  It simply provided her identifying information and stated in boilerplate language, "We are looking for any and all information on the above subjects or businesses, including, but not limited to checking or savings accounts, safety deposit boxes, or any other pertinent information where these individuals/businesses may have accounts."  FBI has previously stated that it was not even the target of this inquiry, and that it was merely forwarded a *copy* of a FISA Alert sent from the Florida Attorney General's Office of Statewide Prosecution to the Financial Institution Security Association.

13.     Confusion surrounds the classification of this record as a "66F" file.  According to previous FBI testimony, a 66F file "is maintained for administrative matters with regards to financial institution fraud."  Def.'s Mem. P. & A. Supp. Def.'s Mot. Summ. J., Dkt. #4, at 4, *Crisman v. DOJ*, No. 11-658 (EGS) (D.D.C.) (filed Oct. 11, 2011).  However, the FBI Manual of Administrative Operations and Procedures merely identifies a 66F file as "Administrative Matters – Other"—a far broader description.  Lastly, 66F files are involved in many of the most significant legal disputes over the Foreign Intelligence Surveillance Act, USA PATRIOT Act, and other national security law issues—many with absolutely *no* relationship to financial institution fraud.  *See*, *e.g.*,

http://www.historycommons.org/sourcedocuments/2001/pdfs/attorneygeneral20010518.pdf (last accessed Nov. 17, 2012) (FISA in general);

http://epic.org/privacy/terrorism/usapatriot/foia/fbi_fisa_patriot.pdf (last accessed Nov. 17, 2012) (same); http://epic.org/privacy/terrorism/usapatriot/foia/fbi_fisa_pen_proc.pdf (last accessed

Nov. 17, 2012) (FISA pen register authority);

http://www.aclu.org/files/fbimappingfoia/20111110/ACLURM004900.pdf (last accessed Nov.

17, 2012) (no-fly lists);

http://www.aclu.org/files/pdfs/spyfiles/ma_16fbi_attach_NJTTFmemoMOU.pdf (last accessed

Nov. 17, 2012) (Joint Terrorism Task Forces).  FBI's assertion that 66F files pertain solely to

financial institution fraud is therefore of dubious merit.

14.     Upon information and belief, the FBI Miami Field Office erroneously

characterized this "FISA Alert" as a record pertaining to the Foreign Intelligence Surveillance

Act and accordingly placed Crisman on numerous national security and homeland security watch

lists which were then disseminated to other federal security agencies and DOJ components.

15.     Shortly after this transmittal, Crisman's personal belongings were searched and

she was escorted out of FRB Headquarters by Security during the work day because of

"something Security found."  Her contract was terminated several weeks later, and she was

subsequently fired by CNI.

16.     Crisman was later informed that the information "Security found" was "something

in her FBI file."

17.     On 25 June 2005 Crisman filed a FOIA/PA request with FBI for all records about

her from the Miami Field Office.  FBI assigned it Request No. 1024779-000 ("the Original

Request").

18.     On 13 October 2005 FBI classified the FISA Alert in its entirety as Confidential.

A senior FBI representative has since opined that this appears to have been due to an FBI FOIA

analyst seeing the word "CONFIDENTIAL" on the document and incorrectly assuming it was a

classification marking, which it was not.

19.     On 4 November 2005 FBI withheld this entire document from Crisman, citing

FOIA Exemption (b)(1) and Privacy Act Exemption (j)(2).

20.     On 14 November 2005 Crisman filed an administrative appeal of FBI's

withholding decision with OIP.  OIP assigned it Appeal No. 06-0524.

21.     On 31 July 2006 OIP affirmed FBI's initial determination, stating, "All of the

information that is contained in the record responsive to your request is classified.  I am

affirming the FBI's withholding of it pursuant to 5 U.S.C. § 552(b)(1), which protects classified

information from disclosure.  I am, however, referring this record to the Department of Justice's

Department Review Committee so that it may determine if the information contained in it should

remain classified under Executive Order No. 12,958, as amended.  You will be informed if any

of this information is declassified."

22.     Upon information and belief, no appellate reviewer at OIP reviewed the FISA

Alert itself before affirming FBI's withholding decision.  Had someone done so, it would have

been immediately obvious that the document was not properly classified.

23.     On 8 October 2008 FBI re-reviewed the FISA Alert and declassified it in full,

informing the Department Review Committee ("DRC") that it no longer needed to review the

record.

24.     On 31 October 2008 OIP informed Crisman that the now-declassified FISA Alert

was being remanded to FBI so it could be reviewed for additional withholdings.

25.     On 13 February 2009 FBI released a redacted copy of the FISA Alert to Crisman

with third parties' personally identifiable information redacted pursuant to FOIA Exemptions

(b)(6) and (b)(7)(C).

26.     The Original Request was the subject of the case *Crisman v. DOJ*, No. 11-658

(EGS) (D.D.C.).  That case was dismissed pursuant to a stipulated dismissal, in which Crisman

agreed, in pertinent part, not to bring further challenges to the adequacy of FBI's search for

records responsive to the Original Request or to FBI's invocations of Exemptions (b)(6) or

(b)(7)(C) to withhold information from the FISA Alert.

### *PART I: FOIA/PA ACCESS REQUESTS*

### *SUBPART A: PROCESSING MATERIALS*

### FIRST CAUSE OF ACTION

### (DOJ – FOIA/PA – CONSTRUCTIVE RECORDS DENIAL – 12-00052)

27.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth

above.

28.     On 27 December 2011 Crisman submitted to OIP a FOIA/PA request for: (1) all

records pertaining to the classification of the FISA Alert; (2) all records pertaining to the

subsequent declassification of the FISA Alert; and (3) all records pertaining to the administrative

processing of Appeal No. 06-0524.  OIP acknowledged receipt of this request and assigned it

Request No. 12-00052.

29.     On 31 July 2012 OIP released several records to Crisman.  OIP informed Crisman

that it had referred three documents, totaling four pages, to FBI for direct response to her.

30.     As of this writing FBI has not issued a final determination for these referred

records.

31.     As twenty working days have elapsed without a substantive determination by

DOJ, Crisman has exhausted all required administrative remedies.

32.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and
there is no legal basis for the denial by DOJ of said right.

## SECOND CAUSE OF ACTION

## (DOJ – FOIA/PA – CONSTRUCTIVE RECORDS DENIAL – 1187773-000)

33.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth
above.

34.     On 27 December 2011 Crisman submitted to FBI a FOIA/PA request for: (1) all
records pertaining to the classification of the FISA Alert; (2) all records pertaining to the
subsequent declassification of the FISA Alert; and (3) all records pertaining to the administrative
processing of the Original Request.  FBI acknowledged receipt of this request and assigned it
Request No. 1179949-000.[1]

35.     On 28 February 2012 FBI released four redacted pages from the Notes section of
FBI's FOIA Document Processing System ("FDPS").

36.     On 3 April 2012 Crisman filed an administrative appeal with OIP of the adequacy
of FBI's search and of FBI's redactions.

37.     On 12 April 2012 FBI reassigned this request Request No. 1187773-000.

38.     On 17 April 2012 OIP acknowledged receipt of this appeal and assigned it Appeal
No. AP-2012-01922.

39.     On 31 May 2012 FBI released an additional record and reassigned this request
Request No. 1187773-001.

---

[1] FBI combined four requests into this Request Number but later divided them into four separate
requests after numerous complaints and appeals were filed.

40.     On 25 September 2012 OIP remanded this request to FBI to perform an additional search.

41.     As of this writing FBI has not issued a final determination for this remanded request.

42.     As twenty working days have elapsed without a substantive determination by DOJ, Crisman has exhausted all required administrative remedies.

43.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and there is no legal basis for the denial by DOJ of said right.

### THIRD CAUSE OF ACTION

### (DOJ – FOIA/PA – CONSTRUCTIVE RECORDS DENIAL – 2522175)

44.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

45.     In 2005 the information classification policy for the federal government was set by Executive Order 12958 (it has since been replaced by Executive Order 13526).

46.     An agency may classify information after it has received a FOIA/PA request for it "only if such classification . . . is accomplished on a document-by-document basis with the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official designated under section 5.6 of [Executive Order 12958]."  Exec. Order 12958 § 1.8(d).

47.     According to the Code of Federal Regulations, the DOJ "senior agency official" authorized to so classify information after the receipt of a FOIA/PA request or direct someone else on a document-by-document basis to do so is the Assistant Attorney General for Administration.  28 C.F.R. § 17.11(a).

48.     On 29 December 1999 the Assistant Attorney General for Administration improperly delegated this authority to the Chief of the FBI Document Classification Unit.  That delegation memorandum also stated, "The Chief of the Document Classification Unit shall act under my direction and shall keep me apprised in a timely manner of any action taken under this authority."

49.     At the same time, the Assistant Attorney General for Administration directed that Gerald Schroeder, Deputy Director of the Security and Emergency Planning Staff ("SEPS"), periodically sample cases in which this delegation was exercised.

50.     Records of the Assistant Attorney General for Administration and SEPS are maintained by JMD.

51.     On 13 June 2012 Crisman submitted to JMD a FOIA/PA request for all records created between 2004-2009 about her, the Original Request, or Appeal No. 06-0524.  JMD acknowledged receipt of this request and assigned it Request No. 2522175.

52.     On 6 August 2012 Crisman advised JMD that archived records originally created by Mr. Schroeder or SEPS were also to be searched for responsive records.

53.     As of this writing JMD has not issued a final determination for this request.

54.     As twenty working days have elapsed without a substantive determination by DOJ, Crisman has exhausted all required administrative remedies.

55.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and there is no legal basis for the denial by DOJ of said right.

### *SUBPART B: OTHER RECORDS*

### FOURTH CAUSE OF ACTION

### (DOJ – FOIA – RECORDS DENIAL – 1187769-000)

56.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth

above.

57.     On 27 December 2011 Crisman submitted to FBI a FOIA request for all records in

File 66F-MM-A55222.  FBI acknowledged receipt of this request and assigned it Request No.

1179949-000.

58.     On 12 April 2012 FBI reassigned this request Request No. 1187769-000.

59.     On 30 April 2012 FBI informed Crisman that the FISA Alert was the only

document responsive to her request because "[n]o other documents in this file pertain to Ms.

Crisman."  FBI did not claim that any FOIA exemptions applied to the remainder of the file.

60.     On 4 June 2012 Crisman filed an administrative appeal with OIP of FBI's

response, arguing that she had requested the entire file, not just the portion of the file pertaining

to her.

61.     Crisman's appeal letter further stated: "Ms. Crisman is willing to limit the scope

of the request to just the 'FISA Alert Report Forms' in File 66F-MM-A55222 which are

classified.  She is further willing to limit the scope of the request to just the date, classification

markings, and serial identifier for each such form, and will stipulate that the FBI may redact all

other information as 'non-responsive' or 'beyond the scope.'  In short, for each classified 'FISA

Alert Report Form' in File 66F-MM-A55222, she wants the following information: (1) the date

of the form (which is near the top of the form); (2) the classification markings on the form; and

(3) the serial number of the form (for instance, the serial number for the form about her is 2974, which is written at the bottom of the page)."

62.     On 11 June 2012 OIP acknowledged receipt of this appeal and assigned it Appeal No. AP-2012-02527.

63.     On 25 September 2012 OIP affirmed FBI's response "on partly modified grounds."  OIP stated: "Without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  . . . Because any records responsive to your client's request would be categorically exempt from disclosure, the FBI properly asserted Exemption 7(C) and was not required to conduct a search for the requested records."  OIP made no mention of the fact that FBI had in fact asserted no FOIA exemptions.

64.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and there is no legal basis for the denial by DOJ of said right.

65.     The information in these records is further needed to identify whether or not FBI's confusion of the FISA Alert with Foreign Intelligence Surveillance Act materials or other misclassification actions was a unique occurrence or indicative of a more widespread problem.

### FIFTH CAUSE OF ACTION

### (DOJ – FOIA/PA – RECORDS DENIAL – 1187783-000)

66.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

67.     On 27 December 2011 Crisman submitted to FBI a FOIA/PA request for "all FBI records about her, including cross-references."  The request further specified: "You may exclude

records released to her in [the Original Request], as well as any records responsive to any other records requests submitted by her today. This request is intended to fill in the gaps between [Request Nos. 1187769-000 and 1187773-001]. This applies to *all* FBI records, including all records held at FBI headquarters, all records held at FBI field offices (especially Miami and the National Capital Area), the Special File Room, all 'tickler' files, and all shared drives, including the 'I-drive' and 'S-drive' (this includes shared drives which have been assigned letters besides 'I-drive' and 'S-drive'). However, this is *not* an exclusive list and is provided only to assist in the FBI's search. *In addition, you are to specifically consider all records documenting the transmission or sharing of information about Mrs. Crisman to other local, state, or federal agencies as responsive to this request. This includes the placing of her name on any lists which are shared with other agencies.*" FBI acknowledged receipt of this request and assigned it Request No. 1179949-000.

68.     On 12 April 2012 FBI reassigned this request Request No. 1187783-000.

69.     On 14 May 2012 FBI informed Crisman that it had identified no main file records in the Central Records System ("CRS") responsive to this request and was refusing to confirm or deny the presence of her name on any watch lists.

70.     On 16 May 2012 Crisman advised FBI that she had specifically requested cross-reference records and not just main file records and had also instructed that several other locations besides the CRS were to be searched.

71.     On 21 May 2012 FBI responded, "All indices that would contain information regarding Ms. Crisman have been searched and no records, main or cross-reference, were located."

72.     On 3 June 2012 Crisman responded, "[T]his request specified several locations to be searched, including field offices, the Special File Room, and shared drives, among others. Please tell me *exactly* which records systems were searched (the 'all indices' to which you refer) and, if any that Ms. Crisman specifically instructed you to search were not, why."

73.     On 19 June 2012 OIP contacted Crisman and advised that FBI wished to treat the 3 June 2012 email as an appeal, asking if Crisman concurred.  Crisman stated that it could be considered a formal appeal if that was the only way to make FBI search the locations it was clearly instructed to search.

74.     On 25 June 2012 OIP acknowledged receipt of this appeal and assigned it Appeal No. AP-2012-02664.

75.     On 11 September 2012 OIP affirmed FBI's response.

76.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and there is no legal basis for the denial by DOJ of said right.

## SIXTH CAUSE OF ACTION

## (FRB – FOIA/PA – CONSTRUCTIVE RECORDS DENIAL – F-2012-00172)

77.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

78.     On 9 January 2012 Crisman submitted to FRB a FOIA/PA request for all records about her dated on or after 26 March 2004.  The request further specified: "Please ensure that the Security Office is tasked with this search in addition to the Contracting Office and Occupational Health Unit, as Ms. Crisman was escorted from the Federal Reserve Building in April 2004 as a potential security risk. *In addition, you are to specifically consider all records documenting the transmission or sharing of information about Ms. Crisman to other local, state, or federal*

14

*agencies as responsive to this request.  This includes the placing of her name on any lists which are shared with other agencies.*"  FRB acknowledged receipt of this request and assigned it Request No. F-2012-00172.

79.     On 12 March 2012 FRB informed Crisman that it had located records and was releasing them to her in full.  FRB subsequently released several records to Crisman, consisting almost exclusively of timesheets, invoices, and related records.  FRB did not provide Crisman with any appeal rights.

80.     On 3 April 2012 Crisman filed an administrative appeal of the adequacy of FRB's search, providing further information that could aid in FRB's search.

81.     On 30 April 2012 FRB responded, "Because of the additional information you provided, we are treating your letter as a reconsideration of the prior request rather than an appeal."  FRB then proceeded to justify its failure to provide any additional records.  Again FRB did not provide Crisman with any appeal rights.

82.     On 4 June 2012 Crisman filed another administrative appeal of the adequacy of FRB's search.

83.     As of this writing FRB has not acknowledged this appeal.

84.     As twenty working days have elapsed without a substantive determination by FRB, Crisman has exhausted all required administrative remedies.

85.     Crisman has a legal right under FOIA/PA to obtain the information she seeks, and there is no legal basis for the denial by FRB of said right.

### *PART II: AMENDMENT REQUESTS*

### SEVENTH CAUSE OF ACTION

### (DOJ – PA/APA/5TH AMENDMENT – FAILURE TO AMEND – 12-094)

86.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

87.     On 25 January 2012 Crisman submitted a Privacy Act amendment request to NSD advising it of FBI's error regarding the FISA Alert and asking that all DOJ records identifying her as a potential national security risk, or otherwise stemming from the FISA Alert, be corrected to reflect the benign nature of that document, and that her name be removed forthwith from any lists upon which she was placed as a result of this error.

88.     On 30 January 2012 NSD acknowledged receipt of this request and assigned it Request No. 12-094.  NSD refused to amend Crisman's records as requested.

89.     On 13 February 2012 Crisman filed an administrative appeal with the Office of Privacy and Civil Liberties ("OPCL") of NSD's response.  Crisman's appeal stated further, "I informed [an NSD representative] that Ms. Crisman would be satisfied if the NSD stated, 'We can neither confirm nor deny the fact of the existence or nonexistence of any records about Ms. Crisman in our FISA database, *but if such a record exists, it will be corrected accordingly*.'  This response would satisfy the NSD's need to keep secret which people are in its database, while assuaging Ms. Crisman's concerns that any records about her will remain incorrect.  Basically, she is willing to trust that if the NSD says it will fix the problem *if* the records exist, it will do so, and she is willing to forego proof of this in exchange for just a simple promise."

90.     On 16 February 2012 OPCL acknowledged receipt of this appeal and assigned it Appeal No. 12-567.

91.      On 2 May 2012 OPCL affirmed NSD's decision.

92.      Crisman has a legal right under the Privacy Act to amend these inaccurate government records, and there is no legal basis for the denial by DOJ of said right.

93.      In addition to the Privacy Act, the APA and Fifth Amendment to the United States Constitution provide this Court with jurisdiction to order DOJ to remove Crisman from any watch list.  *See Latif v. Holder*, 686 F.3d 1122, 1129 (9th Cir. 2012).  Crisman therefore has a legal right to be removed from any watch lists on which she was placed because of the FISA Alert.

### EIGHTH CAUSE OF ACTION

### (DOJ – PA/APA/5TH AMENDMENT – FAILURE TO AMEND – 1180650-000)

94.      Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

95.      On 27 December 2011 Crisman submitted a Privacy Act amendment request to FBI asking that all FBI records (regardless of location) identifying her as a potential national security risk, or otherwise referencing the FISA Alert, be corrected to reflect the benign nature of that document, and that her name be removed forthwith from any lists upon which she was placed as a result of this error.

96.      On 10 January 2012 FBI acknowledged receipt of this request and assigned it Request No. 1179949-000.

97.      On 12 April 2012 FBI reassigned this request Request No. 1180650-000.

98.      On 3 May 2012 FBI refused to amend Crisman's records as requested.

99.      On 4 June 2012 Crisman filed an administrative appeal with OPCL of FBI's response.

100.    On 7 June 2012 OPCL acknowledged receipt of this appeal and assigned it Appeal No. 12-658.

101.    As of this writing OPCL has not issued a final determination for this appeal.

102.    As thirty working days have elapsed without a substantive determination by DOJ, Crisman has exhausted all required administrative remedies.

103.    Crisman has a legal right under the Privacy Act to amend these inaccurate government records, and there is no legal basis for the denial by DOJ of said right.

104.    In addition to the Privacy Act, the APA and Fifth Amendment to the United States Constitution provide this Court with jurisdiction to order FBI to remove Crisman from any watch list.  *See Latif*, 686 F.3d at 1129.  Crisman therefore has a legal right to be removed from any watch lists on which she was placed because of the FISA Alert.

105.    As with the NSD amendment request discussed above, Crisman is willing to accept a guarantee that DOJ will amend any inaccurate records *if they exist* without requiring DOJ to confirm or deny their existence.

## NINTH CAUSE OF ACTION

### (DHS – PA/APA/5TH AMENDMENT – FAILURE TO AMEND – 12-0223)

106.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

107.    On 27 December 2011 Crisman submitted a Privacy Act amendment request to DHS advising it of FBI's error and asking that all DHS records identifying her as a potential national security risk, or otherwise stemming from the FISA Alert, be corrected to reflect the benign nature of that document, and that her name be removed forthwith from any lists upon which she was placed as a result of this error.

18

108.    On 7 February 2012 DHS acknowledged receipt of this request and assigned it Request No. 12-0223.

109.    On 19 March 2012 DHS refused to process this request on the grounds that it did not sufficiently describe the records at issue.

110.    On 2 April 2012 Crisman filed an administrative appeal of DHS' response.

111.    As of this writing DHS has not acknowledged this appeal.

112.    As thirty working days have elapsed without a substantive determination by DHS, Crisman has exhausted all required administrative remedies.

113.    Crisman has a legal right under the Privacy Act to amend these inaccurate government records, and there is no legal basis for the denial by DHS of said right.

114.    In addition to the Privacy Act, the APA and Fifth Amendment to the United States Constitution provide this Court with jurisdiction to order DHS to remove Crisman from any watch list.  *See Latif*, 686 F.3d at 1129.  Crisman therefore has a legal right to be removed from any watch lists on which she was placed because of the FISA Alert.

115.    As with the NSD amendment request discussed above, Crisman is willing to accept a guarantee that DHS will amend any inaccurate records *if they exist* without requiring DHS to confirm or deny their existence.

## TENTH CAUSE OF ACTION

## (ODNI – PA/APA/5TH AMENDMENT – FAILURE TO AMEND – DP-2012-00079)

116.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

117.    On 2 February 2012 Crisman submitted a Privacy Act amendment request to ODNI advising it of FBI's error and asking that all ODNI records identifying her as a potential

national security risk, or otherwise stemming from the FISA Alert, be corrected to reflect the benign nature of that document, and that her name be removed forthwith from any lists upon which she was placed as a result of this error.

118.    On 19 March 2012 ODNI acknowledged receipt of this request and assigned it Request No. DP-2012-00079.  ODNI refused to amend Crisman's records as requested.

119.    On 3 April 2012 Crisman filed an administrative appeal of ODNI's response.

120.    On 9 July 2012 ODNI acknowledged receipt of this appeal.  ODNI affirmed its initial response.

121.    Crisman has a legal right under the Privacy Act to amend these inaccurate government records, and there is no legal basis for the denial by ODNI of said right.

122.    In addition to the Privacy Act, the APA and Fifth Amendment to the United States Constitution provide this Court with jurisdiction to order ODNI to remove Crisman from any watch list.  *See Latif*, 686 F.3d at 1129.  Crisman therefore has a legal right to be removed from any watch lists on which she was placed because of the FISA Alert.

123.    As with the NSD amendment request discussed above, Crisman is willing to accept a guarantee that ODNI will amend any inaccurate records *if they exist* without requiring ODNI to confirm or deny their existence.

## ELEVENTH CAUSE OF ACTION

### (FRB – PA – FAILURE TO AMEND – P-2012-00002)

124.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

125.    On 9 January 2012 Crisman submitted a Privacy Act amendment request to FRB advising it of FBI's error and asking that all FRB records identifying her as a potential national

security risk, or otherwise stemming from the FISA Alert, be corrected to reflect the benign

nature of that document.  Crisman also requested that all FRB records documenting her

expulsion from the building in April 2004 be amended to reflect that this action was solely taken

as a result of this error.

126.     On 23 May 2012 FRB acknowledged this request and assigned it Request No. P-

2012-00002.  FRB closed this request on the grounds that it had not identified any FRB records

meeting this description.  FRB did not provide Crisman with any appeal rights.

127.     On 4 June 2012 Crisman filed an administrative appeal of FRB's response.

128.     As of this writing FRB has not acknowledged this appeal.

129.     As thirty working days have elapsed without a substantive determination by FRB,

Crisman has exhausted all required administrative remedies.

130.     Crisman has a legal right under the Privacy Act to amend these inaccurate

government records, and there is no legal basis for the denial by FRB of said right.

### *PART III: GENERAL CHALLENGES*

### TWELFTH CAUSE OF ACTION

### (DOJ – FOIA – ARBITRARY AND CAPRICIOUS WITHHOLDING – 1024779-000)

131.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth

above.

132.     FOIA provides the Court with the authority to issue a written finding that the

circumstances surrounding a withholding raise questions whether agency personnel acted

arbitrarily or capriciously with respect to the withholding.  5 U.S.C. § 552(a)(4)(F)(i).

133.     FBI's classification of the FISA Alert after receipt of the Original Request without

following the strictures of Executive Order 12958 § 1.8(d) was an arbitrary and capricious action.

134.    FBI's classification of the FISA Alert solely because it was labeled "CONFIDENTIAL" by an unknown source, despite its complete lack of any national security-related information, was an arbitrary and capricious action.

135.    OIP's affirmance of FBI's withholding decision without a review of the FISA Alert itself, which would have shown that the document was not properly classified, was an arbitrary and capricious action.

136.    Crisman is thereby entitled to a written finding that the circumstances surrounding DOJ's withholding of the FISA Alert between 2005-2008 raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding.

## THIRTEENTH CAUSE OF ACTION

## (DOJ – FOIA – WITHHOLDING IMPROPERLY CLASSIFIED INFORMATION)

137.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

138.    The heightened procedural requirements of Executive Order 12958 do not authorize an agency's "senior agency official" to unilaterally delegate a subordinate to exercise the authority reserved for the agency head, the deputy agency head, or the senior agency official by Section 1.8(d) (§ 1.7(d) of Executive Order 13526).  Such authorization must be made on a document-by-document basis.

139.    DOJ's current policy of allowing an FBI official to classify a record after receipt of a FOIA, Privacy Act, or Mandatory Declassification Review ("MDR") request for it necessarily begets an ongoing practice of withholding information under Exemption (b)(1) which is not properly classified.

140.     The Court has virtually unlimited equitable authority to declare a "sufficiently outrageous" ongoing practice to be unlawful even if the agency reversed its position with respect to the FOIA request in question.

141.     A practice of withholding improperly classified information under Exemption (b)(1) is a violation of FOIA.  Such a policy constitutes outrageous conduct for purposes of the broad equitable powers provided by FOIA to the Court.  Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

142.     NSC has filed numerous FOIA requests with DOJ, both on its own behalf and for its clients, which have resulted in the withholding of information under Exemption (b)(1).  The undersigned is currently involved in one case, *Mobley v. DOD*, No. 11-2073 (BAH) (D.D.C.), in which information was withheld from each of the seventeen released FBI documents after being classified after receipt of the client's FOIA/PA request.

143.     Upon information and belief, FBI has classified a significant amount of information after receipt of requests for it in this fashion, including information withheld from NSC.

144.     As a frequent FOIA requester to FBI for records which are often redacted under Exemption (b)(1) which has made many such requests in the past and will continue making such requests in the future, NSC stands to continue to be harmed by this ongoing practice in the future.

145.     Plaintiffs are therefore entitled to relief in the form of a declaratory order that DOJ is in violation of its statutory responsibilities under FOIA and an injunction compelling DOJ pursuant to that statute to only withhold information under Exemption (b)(1) which has been properly classified.

## FOURTEENTH CAUSE OF ACTION

## (DOJ – APA – CLASSIFYING WITHOUT AUTHORITY)

146.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

147.    The policy of allowing an FBI official to independently classify information for which a FOIA, Privacy Act, or MDR request has already been received is a violation of Executive Order 13526.  Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

148.    As a frequent FOIA and MDR requester to DOJ for records which are often withheld as classified which has made many such requests in the past and will continue making such requests in the future, NSC stands to continue to be harmed by this ongoing practice in the future.

149.    Plaintiffs are therefore entitled to relief in the form of a declaratory order that DOJ is in violation of its responsibilities under Executive Order 13526 and an injunction compelling DOJ pursuant to the APA and that Executive Order to only allow the agency head, deputy agency head, or senior agency official, on a document-by-document basis, to classify information or direct another to do so after receipt of a FOIA, Privacy Act, or MDR request for it.

## FIFTEENTH CAUSE OF ACTION

## (DOJ – FOIA – WITHHOLDING IMPROPERLY CLASSIFIED INFORMATION)

150.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

151.    Assuming *arguendo* that DOJ's delegation of the retroactive classification authority is legitimate, the 29 December 1999 memorandum required FBI to "keep [the AAG-Admin] apprised in a timely manner of any action taken under this authority."

152.    None of the information released to Crisman makes any mention of the timely apprisal of the AAG-Admin of FBI's retroactive classification of the FISA Alert, and none of the request correspondence alleges that such information was not provided.

153.    NSC has received a significant amount of FOIA processing information from FBI and DOJ regarding several requests for which Exemption (b)(1) was invoked, none of which makes any mention of the timely apprisal of the AAG-Admin of a retroactive classification decision.  Upon information and belief, a percentage of these invocations of Exemption (b)(1) were due to retroactive classification, about which the AAG-Admin was not timely apprised.

154.    Upon information and belief, FBI's failure to apprise the AAG-Admin of these retroactive classification decisions is indicative of a pattern, practice, or standard operating procedure ("SOP").

155.    Such a pattern, practice, or SOP necessarily begets an ongoing practice of withholding information under Exemption (b)(1) which is not properly classified.  By not apprising the AAG-Admin of these decisions, FBI is removing any chance that an improper retroactive classification decision (such as in this case) will be identified and corrected.  By not insisting that FBI apprise the AAG-Admin of these decisions, DOJ is failing to exercise proper oversight over retroactive classification decisions.

156.    A practice of withholding improperly classified information under Exemption (b)(1) is a violation of FOIA.  Such a policy constitutes outrageous conduct for purposes of the

broad equitable powers provided by FOIA to the Court.  Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

157.    NSC has filed numerous FOIA requests with DOJ, both on its own behalf and for its clients, which have resulted in the withholding of information under Exemption (b)(1).  The undersigned is currently involved in one case, *Mobley v. DOD*, No. 11-2073 (BAH) (D.D.C.), in which information was withheld from each of the seventeen released FBI documents after being classified after receipt of the client's FOIA/PA request.

158.    Upon information and belief, FBI has classified a significant amount of information after receipt of requests for it in this fashion, including information withheld from NSC, and has failed to timely apprise the AAG-Admin of such decisions.

159.    As a frequent FOIA requester to FBI for records which are often redacted under Exemption (b)(1) which has made many such requests in the past and will continue making such requests in the future, NSC stands to continue to be harmed by this ongoing practice in the future.

160.    Plaintiffs are therefore entitled to relief in the form of a declaratory order that DOJ is in violation of its statutory responsibilities under FOIA and an injunction compelling DOJ pursuant to that statute to only withhold information under Exemption (b)(1) which has been properly classified.  If DOJ's delegation of the retroactive classification authority is allowed to stand, the Court should find that FBI cannot retroactively classify information pursuant to this delegated authority unless it timely apprises the AAG-Admin of such decisions.

## SIXTEENTH CAUSE OF ACTION

## (DOJ – APA – FAILURE TO TIMELY APPRISE OR EXERCISE OVERSIGHT)

161.    Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

26

162.     A pattern, practice, or SOP of not timely apprising the AAG-Admin of retroactive classification decisions is a violation of the 29 December 1999 memorandum.  Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

163.     As a frequent FOIA and MDR requester to DOJ for records which are often withheld as classified which has made many such requests in the past and will continue making such requests in the future, NSC stands to continue to be harmed by this ongoing practice in the future.

164.     Plaintiffs are therefore entitled to relief in the form of a declaratory order that DOJ is in violation of its responsibilities under the 29 December 1999 memorandum and an injunction compelling DOJ pursuant to the APA and that memorandum to require FBI to timely apprise the AAG-Admin of all retroactive classification decisions.

### *PART IV: PRIVACY ACT DAMAGES*

### SEVENTEENTH CAUSE OF ACTION

### (DOJ – PA – FAILURE TO MAINTAIN ACCURATE RECORDS)

165.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

166.     Any record identifying Crisman as a potential national security risk or linking her in any way to the Foreign Intelligence Surveillance Act is based on a misreading of the FISA Alert.  Whether or not the FISA Alert pertains to national security is a fact capable of verification.

167.     The presence of Crisman's name on any watch list is similarly based on a misreading of the FISA Alert.  Whether or not the FISA Alert pertains to national security is a fact capable of verification.

27

168.     The mere fact that DOJ possessed *a properly classified record about Crisman*, with all of the implications that accompany that fact should it be provided to someone querying the FBI for records about her, is itself a fact capable of verification.  The FISA Alert was not properly classified.

169.     Upon information and belief, DOJ took no steps to ensure the accuracy, relevance, timeliness, and completeness of its records about Crisman in clear violation of 5 U.S.C. § 552a(e)(5).

170.     As a result, Crisman has suffered adverse and harmful effects, including, but not limited to, lost or jeopardized present or future employment or other financial opportunities.

171.     Because Crisman did not learn until May 2012 that FBI had improperly classified the FISA Alert by not following the procedures of Executive Order 12958 or its own internal memorandum, because DOJ never provided her either in its administrative process or in *Crisman v. DOJ*, No. 11-658 (EGS) (D.D.C.) with any information about the classification decision, she had no way of knowing until May 2012 that the fact that FBI had had a properly classified record about her was an inaccurate fact.  Up until that point, she had reasonably assumed that the classification decision, while substantively meritless, was procedurally sound; she did not know that the information had been classified after FBI's receipt of her request for it.  Therefore, the statute of limitations for a Privacy Act damages claim should not begin to run until 31 May 2012—the first date Crisman had reason to suspect that the information was not properly classified.

172.     Crisman is therefore entitled to relief in the form of a declaratory order that DOJ violated the Privacy Act and an award of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Nancy Crisman and National Security Counselors pray that this Court:

(1)     Order the Department of Justice and Board of Governors of the Federal Reserve System to provide all responsive records to Crisman as soon as practicable;

(2)     Declare and find that DOJ, the Department of Homeland Security, the Office of the Director of National Intelligence, and FRB violated Section 552a(g)(1)(A) of the Privacy Act by depriving Crisman of her right to seek amendment of her records;

(3)     Invoke its equitable powers to expunge all records or information that is inaccurate, derogatory, or infringes upon Crisman's express or implied constitutional or statutory rights, or alternatively conduct a *de novo* review and order Defendants under Section 552a(g)(2)(A) of the Privacy Act to abide by Crisman's amendment requests;

(4)     Invoke its equitable powers to order Defendants to remove Crisman from any watch lists on which she was placed because of the FISA Alert;

(5)     Declare and find that the circumstances surrounding DOJ's withholding of the FISA Alert raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding;

(6)     Declare and find that DOJ violated FOIA by invoking Exemption (b)(1) to withhold information which was retroactively classified without the personal participation or under the direction of the agency head, the deputy agency head, or the Assistant Attorney General for Administration;

(7)     Declare and find that the 29 December 1999 memorandum and any DOJ regulations, guidelines, or policy statements which authorize the invocation of Exemption (b)(1)

29

to withhold such information constitute an unreasonable interpretation of the statutory obligations imposed by FOIA;

(8)     Enjoin DOJ from invoking Exemption (b)(1) to withhold information classified after the receipt of a FOIA, Privacy Act, or Mandatory Declassification Review request without the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official, and order it to amend its regulations, guidelines, and policy statements accordingly;

(9)     Declare and find that DOJ violated Executive Order 12958, as amended (by way of the Administrative Procedure Act), by retroactively classifying information without the personal participation or under the direction of the agency head, the deputy agency head, or the AAG-Admin;

(10)     Declare and find that the 29 December 1999 memorandum and any DOJ regulations, guidelines, or policy statements which authorize such retroactive classification without proper authority constitute an unreasonable interpretation of the obligations imposed by Executive Order 12958, as amended;

(11)     Enjoin DOJ from classifying information after the receipt of a FOIA, Privacy Act, or MDR request without the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official, and order it to amend its regulations, guidelines, and policy statements accordingly;

(12)     Declare and find that DOJ violated FOIA by invoking Exemption (b)(1) to withhold information which was retroactively classified and about which the AAG-Admin was not timely apprised;

(13)     Declare and find that any DOJ regulations, guidelines, or policy statements which authorize the invocation of Exemption (b)(1) to withhold such information constitute an unreasonable interpretation of the statutory obligations imposed by FOIA;

(14)     Enjoin DOJ from invoking Exemption (b)(1) to withhold information retroactively classified and about which the AAG-Admin was not timely apprised, and order it to amend its regulations, guidelines, and policy statements accordingly;

(15)     Declare and find that DOJ violated Executive Order 12958, as amended, and the 29 December 1999 memorandum (by way of the Administrative Procedure Act), by retroactively classifying information and failing to timely apprise the AAG-Admin of the action;

(16)     Declare and find that any DOJ regulations, guidelines, or policy statements which authorize the failure to timely apprise the AAG-Admin of such actions constitute an unreasonable interpretation of the obligations imposed by the 29 December 1999 memorandum, which is claimed by FBI to be its current authority on the matter;

(17)     Enjoin DOJ from classifying information after the receipt of a FOIA, Privacy Act, or MDR request without the timely apprisal of the AAG-Admin, and order it to amend its regulations, guidelines, and policy statements accordingly;

(18)     Declare and find that DOJ violated 5 U.S.C. § 552a(e)(5) by failing to maintain accurate, relevant, timely or complete records pertaining to Crisman;

(19)     Award Crisman monetary damages, in an amount not less than $1,000, for the harm incurred due to DOJ's failure to comply with its obligations under 5 U.S.C. § 552a(e)(5);

(20)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(21)    Award reasonable costs and attorneys' fees as provided in 5 U.S.C. §

552(a)(4)(E), 552a(g)(2)(A), 28 U.S.C. § 2412(d), or any other applicable law;

(22)    Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(23)    Grant such other relief as the Court may deem just and proper.

Date:   November 19, 2012

Respectfully submitted,

_____
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*