# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NANCY CRISMAN, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 12-cv-1871 (TSC) |
| | ) | |
| DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs Nancy Crisman and National Security Counselors ("NSC") have brought suit against the Department of Justice ("DOJ"), the Board of Governors of the Federal Reserve System ("FRB"), the Department of Homeland Security ("DHS"), and the Office of the Director of National Intelligence ("ODNI"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, *as amended*; the Privacy Act, 5 U.S.C. § 552a, *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; and the Fifth Amendment of the United States Constitution. Before the court are Defendants' First Motion for Summary Judgment (ECF No. 26) and Second Motion for Summary Judgment and to Dismiss (ECF No. 46). Upon consideration of the parties' filings, and for the reasons stated herein, the court will GRANT in part and DENY in part both motions.

## I. BACKGROUND

### A. The Financial Institution Security Association ("FISA") Alert

In March 2004, the Financial Institution Security Association ("FISA") sent a document to the Federal Bureau of Investigations' ("FBI") Miami field office. ECF No. 1 (Compl.) ¶ 11.

The document concerned Plaintiff Crisman and was titled "FISA Alert Report Form" (hereinafter, "FISA Alert"). *Id.* It was marked "CONFIDENTIAL," and stated "[w]e are looking for any and all information on the above subjects or businesses, including, but not limited to checking or savings accounts, safety deposit boxes, or any other pertinent information where these individuals/businesses may have accounts." *Id.* ¶¶ 11–12. Although the FISA Alert was a financial inquiry, the FBI erroneously characterized it as a record pertaining to the Foreign Intelligence Surveillance Act. *Id.* ¶ 14. Crisman alleges that the mischaracterization resulted in the termination of her employment as a nurse for Corporate Nurse, Inc. ("CNI"), her expulsion from the FRB headquarters, and the subsequent termination of her assignment as a nurse at the FRB headquarters—all of which occurred after the FISA Alert was sent to the FBI. *See id.* ¶ 15. Based on her expulsion from the FRB headquarters, Crisman also alleges that the mischaracterization has resulted in her name appearing on "numerous national security and homeland security watch lists which were disseminated to other federal security agencies and DOJ components." *Id.* ¶ 14.

**B.  Crisman's Original FOIA Request**

In June 2005, Crisman filed a FOIA and Privacy Act request with the FBI, requesting all records about her—including the FISA Alert—from the FBI's Miami Field Office (the "Original Request"). *Id.* ¶ 17. The FBI refused to produce the FISA Alert, classifying the entire document as "Confidential" and finding that it was entitled to withhold the document under FOIA Exemption (b)(1) and Privacy Act Exemption (j)(2). *Id.* ¶¶ 18–19. Crisman appealed the FBI's withholding decision, which the Office of Information Policy ("OIP") affirmed on July 31,

2006.[1]  *Id.* ¶¶ 20–21.  On October 8, 2008, after re-reviewing the FISA Alert, the FBI

declassified the document in full, releasing a redacted copy of the FISA Alert to Crisman on

February 13, 2009.  *Id.* ¶¶ 23–25.  The document was redacted to withhold third parties'

personally identifiable information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).  *Id.* ¶ 25.

In a lawsuit filed on March 31, 2011—*Crisman v. Dep't of Justice*, No. 11-658 (EGS)

(D.D.C.)—Crisman challenged, *inter alia*, the adequacy of the FBI's search for documents

responsive to her Original Request.  *See* ECF No. 31-1, Ex. 2 ¶¶ 42–61.  On November 8, 2011,

in a Stipulation of Dismissal with Prejudice, Crisman agreed not to further challenge (1) the

adequacy of the DOJ's search for responsive records for the Original Request, or (2) the FBI's

invocations of FOIA Exemptions (b)(6) and/or (b)(7)(C) to withhold information from the FISA

Alert.  Compl. ¶ 26; ECF No. 31-1, Ex. 1 (Stipulation of Dismissal) at 1.

## C.  **Crisman's Subsequent FOIA and Privacy Act Requests**

Shortly after agreeing to the Stipulation of Dismissal in the first lawsuit, Crisman sent

additional requests to the DOJ and other agencies relating to the FISA Alert and the termination

of her assignment at the FRB headquarters.  Specifically, between December 2011 and June

2012, Crisman sent FOIA and/or Privacy Act requests to four agencies: the DOJ, FRB, DHS, and

ODNI.  Her requests are set forth below:

- On December 27, 2011, Crisman requested that OIP, a DOJ component, search for: (1) all records pertaining to the classification of the FISA Alert; (2) all records pertaining to the subsequent declassification of the FISA Alert; and (3) all records pertaining to the administrative processing of Appeal No. 06-0524.

- On December 27, 2011, Crisman requested that the FBI, a DOJ component, search for: (1) all records pertaining to the classification of the FISA Alert; (2) all records pertaining to the subsequent declassification of the FISA Alert; and

---

[1] Crisman's appeal of the FBI's withholding decision was assigned Appeal No. 06-0524.  Compl. ¶ 20.

> (3) all records pertaining to the administrative processing of the Original Request.

- On December 27, 2011, Crisman sent two additional requests to the FBI, requesting (1) all records in File 66F-MM-A55222 and (2) "all FBI records about her, including cross-references."[2]

- On January 9, 2012, Crisman submitted a request to the FRB for all records about her dated on or after March 26, 2004.

- On June 13, 2012, Crisman requested that the Justice Management Division ("JMD"), a DOJ component, search for all records created between 2004 and 2009 about her, the Original Request, or Appeal No. 06-0524.

Compl. ¶¶ 28, 34, 51, 57, 67, 78. Based on her belief that the mischaracterization of the FISA Alert resulted in her placement on national security and homeland watch lists, Crisman also submitted Privacy Act amendment requests requesting that all four agencies correct all records "identifying her as a potential national security risk, or otherwise referencing the FISA Alert . . . to reflect the benign nature of that document." *Id.* ¶¶ 87, 95, 107, 117, 125. She further requested that the DOJ, DHS, and ODNI remove her name "forthwith from any lists upon which she was placed as a result of this error," *id.* ¶¶ 87, 95, 107, 117, and that the FRB amend any records "documenting her expulsion from the building in April 2004." *Id.* ¶ 125.

## D. **Plaintiffs' Allegations in the Current Case**

In the case before this court, Plaintiffs allege, in a seventeen-count Complaint, that the DOJ, FRB, DHS, and ODNI failed to comply with FOIA, the Privacy Act, the APA, and/or the Fifth Amendment in responding to Crisman's FOIA and/or Privacy Act requests. In Counts 1 through 5, Crisman alleges that the DOJ constructively or affirmatively denied her access to certain records related to her, the FISA Alert and the Original Request in violation of FOIA and/or the Privacy Act. Compl. ¶¶ 27–76. In Count 6, Crisman alleges that the FRB violated

---

[2] Upon receiving the FISA Alert, the FBI placed it in File 66F-MM-A55222. Compl. ¶ 13.

FOIA and the Privacy Act by constructively denying her access to records responsive to her request for "all records about her dated on or after 26 March 2004." *Id.* ¶¶ 77–85. Crisman alleges in Counts 7 through 11 that the DOJ, DHS, ODNI, and FRB violated the Privacy Act, APA, and/or the Fifth Amendment by refusing to amend (1) records indicating that she was a national security risk, and/or (2) any watch list upon which she has been placed. *Id.* ¶¶ 86–130. In Counts 12 through 16, Plaintiffs allege FOIA and APA violations related to the DOJ's classification and withholding of the FISA Alert. *Id.* ¶¶ 131–164. Lastly, in Count 17 Crisman seeks damages to compensate her for the "adverse and harmful effects" she has suffered because of the DOJ's improper classification of the FISA Alert. *Id.* ¶¶ 165–172.

In their motions for summary judgment on all claims, Defendants maintain that they have complied with their obligations under FOIA, the Privacy Act, the APA, and the Fifth Amendment in responding to Crisman's FOIA and Privacy Act requests, and that there is no evidence in the record indicating that Crisman was placed on a watch list.

**E. Defendants' Current Motions for Summary Judgment**

On December 3, 2013, Defendants filed their First Motion for Summary Judgment as to Crisman's records denial claims (alleged in Counts 1 through 6) and Privacy Act damages claim (alleged in Count 17). ECF No. 26-1 (Defs. First Mem.) at 8–37. That motion also seeks partial summary judgment on Crisman's Privacy Act amendment claims (alleged in Counts 7 through 11). *Id.* at 37–39. On June 10, 2014, Defendants filed a Second Motion for Summary Judgment and to Dismiss as to Crisman's APA and Fifth Amendment claims in Counts 7 through 10. *See* ECF No. 46-1 (Defs. Second Mem.) at 2–10. Defendants also move for summary judgment on Plaintiffs' claims under the APA in Counts 14 and 16. *See* ECF No. 56 (Defs. Second Reply) at 16–19.

# II.    LEGAL STANDARD

## A.  <u>Summary Judgment</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson*, 477 U.S. at 248).  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (citing *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980)).

FOIA cases are "typically and appropriately . . . decided on motions for summary judgment." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (internal quotation marks and citation omitted).  Upon an agency's request for summary judgment on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is

summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citations omitted).

## B. **Motion to Dismiss**

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court has "an affirmative obligation 'to consider whether the constitutional and statutory authority exist'" for it to consider the claims. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Academy of Scis*, 974 F.2d 192, 196 (D.C. Cir. 1992)). In analyzing whether a plaintiff has standing at the dismissal stage, the court "must assume that [the plaintiff] states a valid legal claim." *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) (citations omitted). The party claiming subject matter jurisdiction bears the burden of proving that it exists, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008), and while "the district court may consider materials outside the pleadings," it "must still accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citations and internal quotation marks omitted).

## III. ANALYSIS

## A. **Defendants' First Motion for Summary Judgment**

### 1. Preclusive Effect of Prior Stipulation

As explained above, Crisman entered into a stipulation in *Crisman v. Dep't of Justice*, No. 11-658 (EGS) (D.D.C), in which she agreed not to "bring any further actions seeking to challenge" (1) the adequacy of the DOJ's search for responsive records for the Original Request or (2) the FBI's invocations of FOIA Exemptions (b)(6) and/or (b)(7)(C) to withhold information from the FISA Alert. Stipulation of Dismissal at 1; Compl. ¶ 26. Defendants argue that "[t]o the

extent that [Plaintiffs'] claims violate the stipulation," they are precluded by judicial or equitable estoppel as well as contract law. Defs. First Mem. at 3, 8–9. However, Defendants do not indicate which claims the stipulation arguably precludes, and therefore have failed to address this issue with sufficient specificity for the court to decide whether the stipulation has preclusive effect.[3] *See, e.g.*, *Wilson v. Dist. of Columbia*, 777 F. Supp. 2d 123, 126 (D.D.C. 2011) (failing to decide an issue on summary judgment where "the parties . . . failed to address [the] issue with sufficient specificity for the Court to rule"). Thus, based on the record before it, the court cannot find that judicial or equitable estoppel preclude Plaintiffs' claims.

2. Claims Regarding the Adequacy of the Agencies' Searches and Applicability of Exemptions

In cases involving the adequacy of an agency's search efforts and the applicability of exemptions, summary judgment may be based on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). An agency may prove the reasonableness of its search via the declaration of a responsible agency official, so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted). There is no requirement that an agency search every record system, but it must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *See Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency declaration can demonstrate reasonableness by "setting forth the search terms and the

---

[3] In a footnote in their Reply in support of their Second Motion, Defendants state that the stipulation precludes the claims in Count 12 but fail to provide any argument or evidence to support this assertion. Defs. Second Reply at 19 n.7.

type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* Once an agency has provided adequate affidavits, the burden reverts to the plaintiff to demonstrate the lack of a good faith search. *Leopold v. Nat'l Sec. Agency*, 196 F. Supp. 3d 67, 72 (D.D.C. 2016). The presumption of good faith "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

With respect to exemptions, if "an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619. Ultimately, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). However, an agency's "affidavits must show, with reasonable specificity, why the documents fall within [a given] exemption. The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (citations omitted).

### i.   Counts 1, 4 and 5

Crisman, in electing "to only challenge some of Defendants' positions" in their First Motion for Summary Judgment, does not oppose Defendants' motion with respect to Counts 1, 4 and 5. ECF No. 41 (Pls. First Opp.) at 5–6. She maintains that her position "should not be construed as a concession of the appropriateness of any agency action left unchallenged." *Id.* at

5. However, "[w]here a party fails to address arguments raised by the opposing party's motion for summary judgment, the Court may treat those arguments as conceded." [4] *Comptel v. FCC*, 945 F. Supp. 2d 48, 55 (D.D.C. 2013); *see also Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175, 227 (D.D.C. 2014) ("When a party fails to address an issue in its opposition brief, the Court may regard that issue as conceded and grant summary judgment to the moving party.") (citing *Comptel*, 945 F. Supp. 2d at 55). Accordingly, the court finds that Defendants are entitled to summary judgment on Counts 1, 4 and 5.

### ii. Count 2 – FBI's Alleged Constructive Records Denial

In Count 2, Crisman alleges that the FBI has constructively denied her access to records in response to her December 27, 2011 FOIA and Privacy Act request, which asks for "(1) all records pertaining to the classification of the FISA Alert; (2) all records pertaining to the subsequent declassification of the FISA Alert; and (3) all records pertaining to the administrative processing of the Original Request." Compl. ¶¶ 33–43; ECF No. 31-1, Ex. 3 (Second Declaration of David M. Hardy, Second Hardy Decl.) ¶ 16. The FBI initially produced four pages in response to this request. Compl. ¶ 35; *see also* Second Hardy Decl. ¶ 12 n.3. Three months later, the FBI released the FISA Alert. Second Hardy Decl. ¶ 19; *see also* Compl. ¶ 39.

Crisman filed an administrative appeal with OIP, contesting the adequacy of the FBI's search and its redactions to the produced documents. Compl. ¶ 36; Second Hardy Decl. ¶ 13. On September 25, 2012, OIP remanded the December 27, 2011 request to the FBI "'for a further search for additional responsive records.'" Second Hardy Decl. ¶ 21 (quoting Second Hardy

---

[4] Crisman also indicates that she does not oppose Defendants' motion with respect to Count 3. *See* Pls. First Opp. at 6. But, as Crisman points out, "Defendants' Motion and brief are silent on Count[] 3," *id.* at 4, and therefore Defendants have not demonstrated that they are entitled to summary judgment on Count 3.

Decl., Ex. M); *see also* Compl. ¶ 40. By a letter dated November 21, 2012, the FBI released all non-exempt material, totaling eight pages, to Crisman. Second Hardy Decl. ¶ 22. An additional search, "[i]n response to this litigation," resulted in six additional pages of responsive records. *Id.* ¶ 43.

Crisman argues that the FBI's productions are deficient because the FBI (1) failed to produce certain relevant documents, and (2) improperly relied on FOIA Exemption (b)(5) to withhold information. *See* Pls. First Opp. at 10–13, 17–19. With regard to the first assertion, Crisman argues that the FBI failed to produce six documents that were "clearly referenced" in the FBI's initial production and which she requested on appeal. *Id.* at 11–13 (detailing the "six clearly referenced documents").

However, "mere reference to other files does not establish the existence of documents that are relevant to [a] FOIA request." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Crisman asserts that the six cross-referenced documents "are responsive to Count 2," Pls. First Opp. at 13, but fails to provide any evidence or information to support this assertion. She also proffers no evidence demonstrating that the six cross-referenced records—all referenced in notes that were made at least two years prior to Crisman's FOIA request—still exist. Absent such evidence, Crisman's suggestion that the six records exist and are relevant to her FOIA request is speculative and does not undermine the reasonableness of the FBI's search. *See, e.g, Steinberg*, 23 F.3d at 552 (finding that "'mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search'") (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1201); *see also Am. Immigration Council ("AIC") v. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 234 (D.D.C. 2013) (finding plaintiff's suggestion that

correspondences exist "largely speculative" where there was no evidence demonstrating that the defendant "saved the meeting minutes" or "retained their correspondence").

Crisman's argument that the six cross-referenced documents were "clear and certain" indications of the existence of additional documents that the FBI could not "in good faith ignore," Pls. First Opp. at 12–13, does not convince the court otherwise. None of the cases on which Crisman relies for this argument hold that cross-references in a responsive document qualify as "clear and certain" leads, requiring agencies to conduct additional searches. Indeed, the D.C. Circuit has suggested that the opposite is true. *See Steinberg*, 23 F.3d at 552 ("[M]ere reference to other files does not establish the existence of documents that are relevant to [a] FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail. . . . FOIA clearly does not impose this burden upon federal agencies."); *see also Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (finding that the CIA's failure to search for records referenced in responsive documents did not render the CIA's search inadequate). Accordingly, given that Crisman's only challenge to the reasonableness of the FBI's search is based on speculation regarding cross-referenced documents, the court finds that the FBI's search was adequate.

Crisman also argues that the FBI improperly relied on Exemption (b)(5) to withhold information on three pages. Exemption (b)(5) allows federal agencies to withhold records if the requested documents include "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In determining whether information was properly withheld under Exemption (b)(5), a court must ensure that the information satisfies two conditions: "its source must be a

Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it*." Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The FBI contends that the redacted information is protected by the deliberative process and attorney work product privileges.

To justify summary judgment, "a declaration must provide detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987)). The court finds that the FBI has failed to do so here. David Hardy—the Section Chief of the Record/Information Dissemination Section, Record Management Division of the FBI—states that the withheld information "is deliberative as it reflects the internal discussion between FBI personnel regarding opinions and proposed recommendations in the handling of plaintiff's FOIPA requests." Second Hardy Decl. ¶ 59. He further states that the redacted "information is predecisional because the FBI evaluated preliminary opinions and analysis made by FBI personnel which eventually resulted in its response to plaintiff's FOIPA request." *Id.* He does not address the work product privilege at all.

Hardy's generalized, conclusory statements do not aid the court in determining whether the redacted information provides an "opinion" or "recommendation" regarding Crisman's FOIA request, and therefore do not adequately demonstrate that the deliberative process privilege applies in this case. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("The [deliberative process privilege] exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency.") Indeed, the Declaration does nothing more than recite the legal standards of the deliberative process privilege, and therefore cannot justify summary judgment with respect to the FBI's withholdings under Exemption (b)(5). *See, e.g., Hayden*, 608 F.2d at 1387 (emphasizing that an agency's affidavits will not suffice if they "are conclusory, merely reciting statutory standards, or if they are too vague or sweeping").

In sum, the court finds that the FBI is entitled to summary judgment on the adequacy of the FBI's search, but not on its withholding of information under Exemption (b)(5). The court will order the FBI to submit another declaration that provides more detail regarding the application of the deliberative process and work product privileges to the information withheld.

### iii. Count 6 – FRB's Alleged Constructive Records Denial

In Count 6, Crisman alleges that the FRB failed to adequately search for records responsive to her January 9, 2012 FOIA and Privacy Act request, which asked for "all records about her dated on or after March 26, 2004." Compl. ¶ 78. In response, the FRB submitted a 15-page declaration from David G. Caperton—Special Counsel for Oversight Reviews in the Legal Division of the Board of Governors of the FRB. *See* ECF No. 31-2, Ex. 5 (Declaration of David G. Caperton, Caperton Decl.). Caperton explained that the FRB conducted two searches. In the first, the FRB searched four components of its Management Division—Human Resources, Health and Employee Relations, Finance and Accounting, and Law Enforcement. *Id.* ¶¶ 16, 19. The search resulted in 13 responsive documents. *Id.* ¶ 8. In response to Crisman's appeal, the FRB conducted a second search of the relevant Management Division components. *Id.* ¶ 21. The second search revealed no additional documents. *Id.* ¶ 22–24.

Crisman appears to no longer contest the adequacy of the FRB's searches. Instead, she

argues that the FRB should have conducted yet another search based on her claim that FRB security personnel informed her that they found "something in her FBI file." Compl. ¶¶ 15–16; Caperton Decl. ¶ 13. During a June 20, 2012 telephone call, Caperton informed Plaintiff's attorney that if he could provide the FRB with the "name of the security person who said something about the FBI," and that person still worked at the FRB, "[they] could ask that person . . . if they have any records related to the incident." Caperton Decl., Ex. H; Caperton Decl. ¶ 14. Crisman's counsel did not provide a name until January 13, 2014, over a year after the Complaint was filed and almost three years after the FRB conducted its searches. *See* ECF No. 45 (Defs. First Reply) at 4; *see also* Pls. First Opp. at 13–14. Crisman cannot rely on this late-supplied information to argue that the FRB's search was inadequate or to request another search.[5] *Mobley v. CIA*, 806 F.3d 568, 582–83 (D.C. Cir. 2015) (finding that "[b]ecause agencies are not required to perform additional searches once their search is concluded, the court cannot conclude that the FBI failed to conduct an adequate search"). The court therefore finds that there is no genuine issue of material fact as to the adequacy of the FRB's searches and grants Defendants summary judgment on Count 6.[6]

---

[5] Crisman also requests that the court, if it "agrees with Crisman that FRB's search was inadequate," order the FRB "to take three other records . . . into account when performing a supplemental search." Pls. First Opp. at 14–15. The records are attached to Plaintiffs' Opposition as exhibits D through F. Having determined that FRB's search was adequate, the court will not order the FRB to conduct another search based on these additional records.

[6] In Count 11, Crisman alleges that the FRB failed to amend "all FRB records identifying her as a potential national security risk, or otherwise stemming from the FISA Alert" and "all FRB records documenting her expulsion from the building in April 2004." Compl. ¶ 125. Caperton explains that the FRB's search—which the court has determined was adequate—returned "'no records identifying Ms. Crisman as a potential national security risk or pertaining to her alleged expulsion from the Federal Reserve Building in April 2004.'" Caperton Decl. ¶ 11 (quoting Caperton Decl., Ex. F). Because there are no records for the FRB to amend, the court finds that the FRB is also entitled to summary judgment on Count 11.

On December 27, 2011, Crisman submitted a Privacy Act amendment request to DHS, in which she informed DHS of the erroneously characterized FISA Alert and explained that she had "reason to believe" that the FISA Alert "led to the creation of an FBI record classifying [her] as a potential national security risk."  ECF No. 30-1 (Declaration of James V.M.L. Holzer, I, Holzer Decl.), Ex. A, at 1.  She further explained that she had "reason to believe that this information has been disseminated to other federal agencies, not least of which is DHS."  *Id.*  Accordingly, she requested that "all DHS records (regardless of location) identifying her as a potential national security risk, or otherwise stemming from the 2004 'FISA Alert,' be corrected immediately to reflect the utterly benign nature of that document, and that her name be removed forthwith from any lists upon which she was placed as a result of this mischaracterization."  *Id.*  In response, DHS explained that "the limited information provided by [Crisman] was not sufficient for the agency to conduct an adequate search," Holzer Decl. ¶ 4, and that it would "undertake a search for responsive records" once additional information was provided.  Holzer Decl., Ex. D, at 1.  In Count 9, Crisman alleges, in part, that DHS's failure to process Crisman's request was improper.  The court disagrees.

FOIA does not require an agency to "honor a request that requires 'an unreasonably burdensome search,'" *Am. Fed'n of Gov't Emps., Local 2782 v. Dep't of Commerce*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)), or that requires the agency "to locate, review, redact, and arrange for inspection a vast quantity of material." *Am. Fed'n of Gov't Emps.*, 907 F.2d at 209.  Here, Plaintiffs request that DHS conduct a search for "all DHS records (regardless of location)" relating to the FISA Alert without providing information regarding "the type of records [they] are seeking, the DHS

component [they] believe created and/or controls the records," "the precipitating event that [they] believe warranted the creation of the records," or "the time period that [they] believe the records or files were created and compiled."  *See* Holzer Decl., Ex. D, at 1.  While the court appreciates that Crisman may not have access to some of this information because of the nature of her request, Crisman has failed to take any steps to narrow her request or assist DHS in its search.

Indeed, in response to DHS's request for additional information, Crisman did not suggest a timeframe for DHS's search or provide guidance as to the types of records DHS should search for, but instead assumed that the requested information "is exclusively under the control of DHS and the FBI."  Holzer Decl., Ex. E, at 1.  Thus, to fulfill Crisman's request, DHS—which does not maintain a central index of records about individuals—would have to take on the burdensome task of examining and sifting through numerous records, without guidance as to the timeframe, location, or likely format of the records Plaintiffs seek.  Neither FOIA nor the Privacy Act require DHS to do so.  *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) ("FOIA was not intended to reduce government agencies to full-time investigators."); *see also Sack v. CIA*, 53 F. Supp. 3d 154, 165 (D.D.C. 2014) (noting that seeking "additional guidance from the [FOIA] requester and, when none was provided, clos[ing] the file" was "a reasonable path" when the requester failed to provide sufficient information regarding the records sought); *SAI v. TSA*, 315 F. Supp. 3d 218, 248–49 (D.D.C. 2018) (finding a plaintiff's FOIA and Privacy Act request "vastly overbroad" and thus not demanding a "response commensurate with the request").

Nonetheless, the court is not inclined to grant Defendants summary judgment, and risk denying Crisman access to potentially responsive documents, when it appears that neither party

has made a concerted effort to come to an agreement on the contours of DHS's search. Based on the record, DHS, too, has failed to propose ways to define and narrow the scope of Crisman's request. *See* Holzer Decl., Ex. D at 1 (letter detailing DHS's need for additional information but failing to propose DHS components that may contain responsive records). Thus, the court will deny summary judgment on Count 9 as to DHS's failure to search for responsive records and order the parties to meet, confer, and attempt to define and narrow the scope of DHS's search for responsive records.

### 3. Privacy Act Amendment Claims (Counts 7–11, 17)

In Counts 7 through 11, Crisman alleges that the National Security Division ("NSD") of the DOJ, the FBI, DHS, ODNI, and the FRB violated the Privacy Act in failing to amend their records "identifying her as a potential national security risk, or otherwise stemming from the FISA Alert . . . to reflect the benign nature of [the FISA Alert]." *See* Compl. ¶¶ 87, 95, 107, 117, 125. Crisman further alleges that NSD, FBI, DHS, and ODNI improperly denied her request that "her name be removed forthwith from any lists upon which she was placed as a result of [the] error." *Id.* ¶¶ 87–92, 95–103, 107–13, 117–21. Additionally, Crisman alleges that the FRB improperly refused to amend its records "documenting her expulsion from the building in April 2004 . . . to reflect that this action was solely taken as a result of" the improper classification of the FISA Alert. *Id.* ¶ 125. In Count 17, Crisman seeks damages under the Privacy Act for the "adverse and harmful effects" she has suffered as result of the DOJ's misclassification of the FISA Alert. *Id.* ¶¶ 170, 172. She requests "relief in the form of a declaratory order that DOJ violated the Privacy Act and an award of damages." *Id.* ¶ 172.

Crisman voluntarily withdrew her Privacy Act claims in Counts 7, 8, 9, and 10.[7]  Pls. First Opp. at 6 n.8.  The only Privacy Act claims remaining are Counts 11—Crisman's failure to amend claim against the FRB—and Count 17—a claim for damages stemming from the DOJ's failure to properly classify the FISA Alert.  As discussed above, this court has found that because the FRB's search returned no records "'identifying Ms. Crisman as a potential national security risk or pertaining to her alleged expulsion from the Federal Reserve Building in April 2004,'" Caperton Decl. ¶ 11 (quoting Caperton Decl., Ex. F), there were no documents to amend, and therefore Defendants are entitled to summary judgment on Count 11.

In Count 17, Crisman alleges that she is entitled to damages under the Privacy Act's accuracy provision, 5 U.S.C. § 552a(e)(5), because the FBI failed to follow the procedures of Executive Order 12958 and its own internal memorandum in classifying the FISA Alert.  *See* Compl. ¶¶ 165–72.  Defendants respond that they are entitled to summary judgment on Count 17 for two reasons.  First, that Crisman was aware on February 9, 2009, when she received the "FISA Alert Report Form," "of the potential for a Privacy Act claim regarding the proper classification of the record," and therefore her November 2012 claim for damages is untimely. Defs. First Mem. at 37–38.  In response, Crisman argues that the FBI "mistakes the nature of the alleged violation."  Pls. First Opp. at 19.  She explains that she is contesting the FBI's failure to follow the proper classification *procedures* detailed in Executive Order 12958 and its own internal memorandum in classifying the FISA Alert—which she learned about in May 2012—

---

[7] Crisman maintains her claims in Counts 7, 8, 9, and 10 under the APA and the Fifth Amendment.  Additionally, as discussed previously, Crisman also maintains her claims under Count 9 to the extent they challenge DHS's failure to search for records responsive to her FOIA and Privacy Act request.

and not the misclassification itself.[8]  *Id.* at 20.  Therefore, Crisman argues, the two-year time frame for seeking damages under the Privacy Act did not begin to run until May 2012.

The Privacy Act permits complainants to bring actions "within two years from the date on which the cause of action arises."  5 U.S.C. § 552a(g)(5).  A cause of action arises under the Privacy Act when "the plaintiff knows or should know of the alleged violation."  *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987) (citation omitted).  Here, Crisman maintains that she did not learn "that FBI had actually *improperly* classified the 'FISA Alert' by not following the governing Executive Order or DOJ regulations" until May 2012.  Pls. First Opp. at 20.  Defendants have not offered any evidence or information to suggest otherwise.  Given that Plaintiffs filed their Complaint on November 19, 2012—less than six months after Crisman learned of the FBI's allegedly improper conduct—the court finds that Crisman's claim for damages under the Privacy Act is not time-barred.

Second, Defendants argue that Crisman is not entitled to relief on Count 17 because DOJ's records are exempt from the accuracy and amendment provisions of the Privacy Act.  Defendants explain that "[t]he Privacy Act allows an agency's Director to promulgate regulations that exempt any system of records within the agency from" certain provisions of the Privacy Act.  Defs. First Mem. at 39 (citing 5 U.S.C. § 552a(j)(2)).  In his declaration, Hardy points out that all records that are a part of the FBI's Central Records System, including the FISA Alert, are exempt from disclosure under the Privacy Act, as prescribed by 28 C.F.R. § 16.96.  Second Hardy Decl. ¶53.  Pursuant to 28 C.F.R. § 16.96, the FISA Alert is also exempt from the Privacy Act's accuracy provisions—5 U.S.C. § 552a(e)(5) and 5 U.S.C. §

---

[8] The FBI released the FISA Alert with declassification markings to Crisman on May 31, 2012.  *See* Second Hardy Decl. ¶¶ 19–20.

552a(g)(1)(C)—which require agencies to maintain any record concerning an individual "with . . . accuracy, relevance, timeliness, and completeness." 5 U.S.C. § 552a(e)(5); *see also* 5 U.S.C. § 552a(g)(1)(C). Accordingly, the FBI's regulations prohibit Crisman from advancing a Privacy Act amendment or accuracy claim against it, and therefore the court will grant summary judgment on Count 17.

## B. Defendants' Second Motion for Summary Judgment and to Dismiss

In their Second Motion for Summary Judgment and to Dismiss, Defendants seek dismissal or summary judgment on Counts 7 through 10,[9] in which Crisman seeks, pursuant to the Privacy Act, APA and the Fifth Amendment, the removal of her name from any watch list on which she was placed following the mischaracterization of the FISA Alert. *See* Compl. ¶¶ 87, 95, 107, 117. As discussed above, Crisman voluntarily withdrew her claims under the Privacy Act amendment provisions in response to Defendants' First Motion for Summary Judgment. *See* Pls. First Opp. at 6 n.8. In their Second Motion, Defendants request the dismissal of Counts 7 through 10 in their entirety, challenging Crisman's allegations under the APA and Fifth Amendment. ECF No. 46 (Defs. Second Mot.) at 1.

---

[9] Both parties reference Count 11 in their briefs. *See, e.g.*, Defs. Second Reply at 4 (titling a subsection of their brief "Plaintiff's Claims 7-11 are not Actionable and Should Be Dismissed"); ECF No. 50 (Pls. Second Opp.) at 16 n.8 ("While it is not explicitly stated, Defendants' standing argument appears to only apply to Counts 7-11."). The court has already granted summary judgment on Count 11 with respect to Crisman's claims under the Privacy Act. *See supra* at 15 n.6. Moreover, in Count 11, Crisman does not allege violations under the APA or the Fifth Amendment—the focal points of Defendants' second motion. Defs. Second Mot. at 1 (noting that the second motion "focuses primarily on additional claims advanced under the Administrative Procedure Act and the Fifth Amendment to the U.S. Constitution"). Therefore, the court will not address Count 11 in its analysis of Defendants' second motion.

1. <u>Standing</u>

Defendants first argue that Crisman's amendment claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defs. Second Reply at 8. Specifically, Defendants argue that Crisman fails to "articulate any injury—actual, threatened, or imminent—entitling [her] to relief," and therefore lacks standing to bring the APA and Fifth Amendment claims alleged in Counts 7 through 10. Defs. Second Mem. at 2. The court agrees.

Under Article III of the United States Constitution, a federal court cannot consider the merits of a claim until the party seeking to invoke the jurisdiction of the court can establish the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990). To do so, a plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). When injunctive or declaratory relief is sought, a plaintiff "must show he is suffering an ongoing injury or faces an immediate threat of [future] injury." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011) (citations omitted). Past injuries do not themselves "'show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Veitch v. England*, 471 F.3d 124, 133 (D.C. Cir. 2006) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

Crisman alleges that "[u]pon information and belief, the FBI Miami Field Office . . . placed [her] on numerous national security and homeland security watch lists which were then disseminated to other federal security agencies and DOJ components." Compl. ¶ 14. However,

she also "admits . . . that there is a chance that her name was not placed on a watchlist in 2004." Pls. Second Opp. at 4 n.2.  Crisman does not allege that the dissemination of these lists has resulted in "ongoing injury," such as the inability to travel or recurring, intrusive delays while traveling.  Nor does she allege that there is a threat that such harms will occur in the immediate future.  Rather, she asserts that after allegedly being placed on a watch list in 2004, her "belongings were searched," "she was escorted out of FRB Headquarters," "[h]er contract was terminated" and "she was subsequently fired by CNI."  Compl. ¶ 15.  She also argues that due to her alleged placement on a watch list, she was required to undergo "extra screening" both times she traveled by air since 2004, once in March 2009 and again in August 2011.  Pls. Second Opp. at 12; ECF No. 50-4 (Pls. Second Opp., Ex. D) ¶¶ 8–9.  All of these alleged harms—the search, contract termination, job termination, and "extra screenings"— occurred at least a year before Plaintiffs filed their Complaint, and are therefore not sufficiently "imminent" or "ongoing" to demonstrate that "a present case or controversy" exists.  *Veitch*, 471 F.3d at 133.

Moreover, even if Crisman's alleged harms were imminent and ongoing, she has failed to demonstrate that these harms are "fairly traceable" to her alleged placement on a watch list.  As noted above, Crisman is herself unsure of whether her name was actually placed on a watch list, and makes her assertion based on "information and belief."  Compl. ¶ 14; *see also* Pls. Second Opp. at 4 n.2.  Despite this concession, Crisman maintains that her "name was entered into *a* watch list—possibly [Violent Gang and Terrorist Organizations File] VGTOF, possibly the [Terrorist Screening Database] TSDB—by an FBI agent in the Miami Field Office in March or April 2004."  Pls. Second Opp. at 9.

Crisman's main argument in support of this assertion is that because she was escorted out of FRB headquarters due to "something in her FBI file," her name must have been placed on a

watch list. *Id.* at 11. However, aside from quoting from a standard notice relating to the VGTOF

and TSDB watch lists that FRB Security "would likely have read," *id.* at 11–12, Crisman

provides no evidence establishing that the "something in her FBI file" was a notice or other

evidence indicating that her name was placed on a watch list.

Crisman further argues that there are three additional events demonstrating her placement

on a watch list: (1) the FRB's Assistant Director of Human Resources' indication that Crisman

had been "Removed, Based on Suitability or Security Determination," (2) the fact that she was

"singled out for extra screening" at the airport, and (3) DOJ's observation that the "FBI's

procedures for tracking and removing names from the TSDB were far from optimal." *Id.* 12–14.

But again, Crisman fails to provide any evidence clearly connecting these events to her name

being placed on a watch list.[10] *See, e.g.,* Pls. Second Opp. at 12 (arguing that "being singled out

for extra screening" is "consistent with"—not *indicative of*— "placement on the Transportation

Security Administration ("TSA") Selectee List or Expanded Selectee List").

This court cannot rely on Crisman's speculative and conclusory assertions to find that the

FISA Alert led to her placement on a watch list, let alone that her alleged harms are "fairly

traceable" to such placement or to the FISA Alert. *Winpisinger v. Watson*, 628 F.2d 133, 139

(D.C. Cir. 1980) (finding no standing where the court "would have to accept a number of very

---

[10] On September 9, 2014, Plaintiffs filed a Motion for Leave to File Additional Exhibits. ECF No. 52. The court will grant Plaintiffs' motion. However, Plaintiffs' first additional exhibit— Exhibit I—does not alter the court's analysis regarding whether Crisman has established that she was placed on a watch list. Exhibit I is a document Plaintiffs believe "demonstrates that [the 66F files designation] was used for watch list issues in May 2003." ECF No. 52 at 1. Plaintiffs appear to argue that this fact coupled with the fact that the FISA Alert was designated as a 66F file, Compl. ¶ 13, supports their argument that Crisman's name was placed on a watch list in 2004. But, absent evidence demonstrating that the FISA Alert was designated a 66F file *because* Crisman was placed on a watch list, the court does not find that such a designation establishes her placement on a list.

speculative inferences and assumptions in an endeavor to connect the alleged injury with [the challenged conduct]"); *see also Am. Sports Council v. Dep't of Educ.*, 850 F. Supp. 2d 288, 292 (D.D.C. 2012) ("A 'mixture of speculation and conclusory assertion . . . does not satisfy the Supreme Court's requirement for specific, concrete facts demonstrating injury, and particularized allegations of fact.'") (quoting *Block v. Meese*, 793 F.2d 1303, 1308 (D.C. Cir. 1986)). Accordingly, the court finds that Crisman lacks standing to advance her Fifth Amendment and APA claims alleged in Counts 7 through 10, and that the claims are therefore dismissed.[11]

### 2. Defendants' Additional Arguments

Defendants also argue that Counts 7 through 10, to the extent they advance claims under the Fifth Amendment and APA, should be dismissed for their failure to state a claim. Having determined that Crisman lacks standing to bring her Fifth Amendment and APA claims raised in Counts 7 and 10, the court need not address these additional arguments.

### 3. Plaintiffs' Remaining Claims

In Counts 12 through 16, Plaintiffs allege that the FBI failed to follow the procedures of Executive Order 12958 and its own internal memorandum when classifying the FISA Alert. *See* Compl. ¶¶ 131–72. Although Defendants purport to address Counts 12, 13 and 15 in their second motion, they have not provided argument with regard to these counts.[12] *See* Defs. Second Reply at 16 (titling a subsection of its reply brief "The Complaint Does Not State an APA Claim (Counts 7-10, 12-16)" but failing to address why summary judgment or dismissal is warranted on

---

[11] As discussed previously, Count 9 survives Defendants' motions to the extent that Defendants are required to meet, confer, and attempt to define and narrow the scope of DHS's search for records responsive to Plaintiffs' FOIA and Privacy Act request.

[12] As stated previously, Defendants assert that the stipulation precludes the claims in Count 12 but fail to provide any argument or evidence to support this assertion. Defs. Second Reply at 19 n.7.

Counts 12, 13 and 15). In light of Defendants' failure to provide a basis for their motion, the court will deny summary judgment and dismissal on Counts 12, 13 and 15.

Defendants do address Counts 14 and 16, which allege violations under the APA, arguing that summary judgment should be granted on those counts because "FOIA provides for review" of Plaintiffs' claims, and therefore "Plaintiff may not seek review under the more generalized provisions of the APA." Defs. Second Reply at 18 (noting that the APA, at 5 U.S.C. § 704, provides that judicial review is warranted under the APA only when "there is no other adequate remedy" in a court); *see also id.* at 18 n.6 ("APA relief in FOIA cases suggests that the breadth of the relief available under FOIA may leave little need for reliance on the APA as a remedial measure."). Plaintiffs do not dispute that their allegations under the APA can be brought under FOIA, alleging the APA violations in Counts 14 and 16 only "as alternatives to the FOIA arguments made in Counts 13 and 15, respectively." Pls. Second Opp. at 23; *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms," and where an agency's actions in response to a FOIA request "violate the intent and purpose of the FOIA . . . the courts have a duty to prevent these abuses.") (citation omitted); *Mutitt v. United States Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011) ("[W]here a plaintiff challenges an alleged pattern and practice of violating procedural requirements of FOIA in connection with the processing of the plaintiff's FOIA requests[,] the Court has the power under FOIA and *Payne* to provide the requested declaratory and injunctive remedies."). Given that the APA claims advanced in Counts 14 and 16 are properly brought under FOIA in Counts 13 and 15, the court will grant summary judgment on Counts 14 and 16.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' First Motion for Summary Judgment and Second Motion for Summary Judgment and to Dismiss will be GRANTED in part and DENIED in part. The court will grant Defendants summary judgment on and/or dismiss Counts 1, 4, 5, 6, 7, 8, 10, 11, 14, 16 and 17.  The court will deny summary judgment as to Counts 3, 12, 13 and 15.  The court will grant in part and deny in part summary judgment on Counts 2 and 9.

A corresponding order will issue separately.

Date:  September 18, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge