**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NANCY CRISMAN, *et al.*,<br><br>       Plaintiffs,<br><br>     v.<br><br>DEPARTMENT OF JUSTICE, *et al.*,<br><br>       Defendants. | Civil Action No. 12-cv-1871 (TSC) |

**MEMORANDUM OPINION**

Plaintiffs Nancy Crisman and National Security Counselors sued the Department of Justice ("DOJ"), the Board of Governors of the Federal Reserve System, the Department of Homeland Security ("DHS"), and the Office of the Director of National Intelligence, alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, *as amended*; the Privacy Act, 5 U.S.C. § 552a, *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*; and the Fifth Amendment of the United States Constitution. Before the court are Defendants' Renewed Motion for Summary Judgment, ECF No. 89, and Plaintiffs' Cross Motion for Summary Judgment, ECF No. 92. Upon consideration of the parties' filings, and for the reasons stated herein, the court will GRANT Defendants' Renewed Motion for Summary Judgment and DENY Plaintiffs' Cross Motion for Summary Judgment.

I.    **BACKGROUND**

In March 2004, the Federal Bureau of Investigation ("FBI") miscategorized a document from the Financial Institution Security Association seeking information about Crisman's bank accounts, entitled "FISA Alert Report Form," as pertaining instead to the Foreign Intelligence

Surveillance Act. *See* Compl. ¶¶ 11, 12, 14, ECF No. 1. Crisman alleges that, because of this error, she lost her job as a nurse and was added to various national security watchlists. *See id.* ¶¶ 14–15. In June 2005, she filed FOIA and Privacy Act requests with the FBI, seeking the FISA Alert and all records about her. *Id.* ¶ 17. The FBI designated the FISA Alert as confidential and denied her request based on that classification. *Id.* ¶¶ 18–19.

Crisman appealed, and the Office of Information Policy affirmed the FBI's decision. *Id.* ¶¶ 20–21. In October 2008, the FBI re-reviewed and declassified the FISA Alert, releasing a redacted version in February 2009. *Id.* ¶¶ 23–25. In October 2011, Crisman filed suit, challenging the adequacy of the FBI's search for documents, but the case was dismissed with prejudice by stipulation. *Id.* ¶ 26. Crisman filed another FOIA and Privacy Act request with the FBI in December 2011, seeking all records pertaining to the classification and declassification of the FISA Alert and "all FBI Records about her, including cross-references." *Id.* ¶¶ 34, 57, 67.

In November 2012, Plaintiffs filed a seventeen-count Complaint in this case, alleging that DOJ, DHS, the Federal Reserve Board, and the Office of the Director of National Intelligence failed to comply with the FOIA, the Privacy Act, the APA, and the Fifth Amendment in responding to Crisman's FOIA and Privacy Act requests. *Id.* ¶¶ 27–43, 56–76. The court entered summary judgment in Defendants' favor on most claims. *See* ECF Nos. 63, 67; *Crisman v. Dep't of Just.*, 332 F. Supp. 3d 139 (D.D.C. 2018), *supplemented*, 2019 WL 1330587 (D.D.C. Mar. 25, 2019).

The court denied summary judgment on Counts 3, 12, 13, and 15 because Defendants failed to present argument. *Crisman*, 332 F. Supp. 3d at 149 n.4, 158. As to Count 9, the court rejected Plaintiffs' claim that DHS's failure to process Crisman's FOIA and Privacy Act requests was improper, but ordered the parties to meet, confer, and attempt to define and narrow the scope of the search. *Id.* at 153–154. Defendants now move for summary judgment on Counts 3, 9, 12, 13,

and 15, *see* Defs.' Renewed Mot. Summ. J., ECF No. 89, and Plaintiffs cross-move for summary judgment on all but Count 3, Pls.' Cross Mot. Summ. J., ECF No. 92.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the facts in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A material fact is one that "might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). An agency must demonstrate that no material facts are in dispute as to whether it conducted an adequate search for responsive records, and that each responsive record has been produced or is exempt from disclosure. *See Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014). "In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "Although an agency may not ignore a request to search specific record systems when a request reaches the agency before it has completed its search, a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are not reasonably likely to contain responsive records." *Mobley v. CIA*, 806 F.3d 568,

582 (D.C. Cir. 2015) (citations omitted). The agency can fulfill this requirement by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Once the agency has provided an adequate declaration, the burden reverts to the plaintiff to demonstrate the lack of a good faith search. *Leopold v. Nat'l Sec. Agency*, 196 F. Supp. 3d 67, 72 (D.D.C. 2016).

If the agency invokes a FOIA exemption, it bears the burden of demonstrating that the exemption applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). But its justification "will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). Relatedly, the agency may "refus[e] to confirm or deny its possession of responsive documents"—called a *Glomar* response—"if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374). The same "general exemption review standards" apply in *Glomar* and non-*Glomar* cases. *Wolf*, 473 F.3d at 374.

### III. ANALYSIS

1. Count 3

In June 2012, Crisman submitted a FOIA and Privacy Act request to the Justice Management Division ("JMD"), a division of DOJ, for all records about her created between 2004 and 2009. *See* Compl. ¶ 51. When they filed their Complaint, Plaintiffs alleged that they had not

yet received a final response from the JMD. *See id.* ¶ 53. A declaration from Karen McFadden, the JMD's FOIA Contact, details the JMD and Security and Emergency Planning Staff's extensive search, which yielded no responsive records. McFadden Decl. ¶¶ 8, 9–12, ECF No. 89-3, Ex. A. Plaintiffs do not oppose summary judgment on this count, and accordingly, the court determines that summary judgment is appropriate. *See* Pls.' Cross Mot. Summ. J. at 2 n.2; *Comptel v. FCC*, 945 F. Supp. 2d 48, 55 (D.D.C. 2013).

  2. Count 9

In December 2011, Crisman requested, under the Privacy Act, amendment of "all DHS records (regardless of location) identifying her as a potential national security risk, or otherwise stemming from the 2004 'FISA Alert,'" and removal of her name from any watchlists. Holzer Decl. at 1, ECF No. 30-1. Plaintiffs allege that the agency's failure to process and implement her request violated the FOIA, the Privacy Act, the APA, and/or the Fifth Amendment. Compl. ¶¶ 107–115. Given the overbroad nature of Crisman's request, the court found that DHS's failure to process the request was not unlawful, but directed "the parties to meet, confer, and attempt to define and narrow the scope of DHS's search for responsive records." *Crisman*, 332 F. Supp. 3d at 154.

The parties did so, and DHS identified the agencies that might have responsive records about screening activities: the Office of Policy Screening and Vetting Group; U.S. Customs and Border Protection (CBP)'s "TECS" system; the Office of Intelligence and Analysis; the Coast Guard; the Secret Service; the Transportation Security Administration; and U.S. Citizenship and Immigration Services ("USCIS").[1] *See* 2d. Holzer Decl. ¶ 9, ECF No. 89-4, Ex. B.

---

[1] Plaintiffs challenge Defendants' suggestion that Plaintiffs specifically requested a search of the Office of Policy Screening and Vetting Group. *See* Pls.' Cross Mot. Summ. J. at 6–7. But in the absence of any argument that there were other locations or record systems that were likely to turn

While the agencies did not locate responsive records, Defendants provided declarations from agency officials that, with reasonable specificity, detail each agency's search of the locations most likely to have responsive records or explain why there was no reasonable likelihood that the agency would have responsive records to produce or that could be acknowledged. *See, e.g.*, 2d. Holzer Decl. ¶ 10 (Office of Policy Screening and Vetting Group); *id.* ¶¶ 9, 12 (USCIS); Howard Decl. ¶¶ 7, 9, ECF No. 89-4, attached to 2d Holzer Decl. as Ex. 1 (CBP); Smislova Decl. ¶ 19, ECF No. 89-4, attached to 2d Holzer Decl. as Ex. 3 (Office of Intelligence and Analysis); Judge Decl. ¶ 3, ECF No. 89-4, attached to 2d Holzer Decl. as Ex. 2 (Coast Guard); Tyrrell Decl. ¶¶ 3, 4, 6, 7, 13, 14, ECF No. 89-4, attached to 2d Holzer Decl. as Ex. 5 (Secret Service).

Plaintiffs' sole argument challenging these searches concerns DHS's withholding of information about Crisman's placement on any watchlists. Specifically, the Intelligence Office and TSA asserted *Glomar* responses relying on FOIA Exemption 3, which permits the Government to withhold information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). As to the Office of Intelligence and Analysis, the declaration from Acting FOIA Officer Melissa Smislova explains that Exemption 3 applies, in conjunction with 50 U.S.C. § 3024(i) and 6 U.S.C. § 121(d)(11), because acknowledging the existence or nonexistence of watchlist information "would reveal whether the Plaintiff was a target of intelligence collection" and whether "intelligence methods have been applied against the Plaintiff." Smislova Decl. ¶¶ 11, 17. "The Plaintiff . . . could then take countermeasures to identify and frustrate . . . intelligence efforts," causing "the Intelligence Community [to] lose the ability to monitor and analyze activities that are vital to protecting national security." *Id.* Similarly, the declaration from TSA FOIA Officer Teri

---

up relevant information, such "purely speculative claims about the existence and discoverability of other documents" are insufficient at the summary judgment stage. *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

Miller explains that under Exemption 3 and 49 U.S.C. § 114(r), the agency "cannot confirm whether TSA has records indicating whether Ms. Crisman has been placed on the No Fly or Selectee watch lists, or why" because doing so "would provide insight as to whether her name is included on either watch list," allowing "organizations bent on circumventing TSA's security measures . . . to determine in advance whether an individual they hoped to use to such ends is more or less likely to receive heightened scrutiny."  Miller Decl. ¶¶ 11, 12, ECF No. 89-4, attached to 2d Holzer Decl. as Ex. 4.

Plaintiffs argue that because their claim involves a Privacy Act amendment request, the agency cannot rely on FOIA exemptions to justify withholding information regarding Crisman's watchlist status.  *See* Pls.' Cross Mot. Summ. J. at 2–5.  But "Crisman voluntarily withdrew her Privacy Act claims" as to Count 9.  *Crisman*, 332 F. Supp. 3d at 154 (citing Pls.' Opp'n to Mot. Summ. J. at 6 n.8, ECF No. 41).  Crisman "maintains her claims under Count 9 to the extent they challenge DHS's failure to *search for records* responsive to her FOIA and Privacy Act request."  *Id.* at 154 n.7 (emphasis added).  Given Plaintiffs' binding withdrawal of any Privacy Act claim under Count 9, the Government therefore properly construed what remains of that count as a challenge to the adequacy of the Government's search for documents, evaluating the reasonableness of the search and exemptions under FOIA standards.

In the absence of arguments meaningfully challenging the adequacy of Defendants' search or its invocation of Exemption 3, the court finds, in line with decisions from this district, that Defendants' "declaration[s] offer sound justifications for nondisclosure with 'reasonable specificity of detail,' which have not been 'called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Kalu v. Internal Revenue Serv.*, 159 F. Supp. 3d 16, 24 (D.D.C. 2016) (quoting *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir.

2012)); *see Ryan v. Fed. Bureau of Investigation*, 113 F.Supp.3d 356, 363 n.5 (D.D.C. 2015) (collecting cases). Therefore, summary judgment is appropriate as to the adequacy of DHS's search.

### 3. Counts 12, 13, and 15

Plaintiffs contend that the FBI's classification of the FISA Alert after receiving Crisman's original FOIA request contravened Executive Order 12958 as well as its own internal policy. *See* Compl. ¶¶ 131–72. The FBI acknowledged that it misclassified the document when it released the record to Crisman in 2009. *See* Defs.' Renewed Mot. Summ. J. at 3.

Generally, "[o]nce requested records are produced, there is no longer a case or controversy, and the FOIA action becomes moot." *Cunningham v. U.S. Dep't of Just.*, 961 F. Supp. 2d 226, 236 (D.D.C. 2013) (citing *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)); *see Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution."). But as a limited exception to this principle, "relief as to a *specific request* under the FOIA . . . will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future," that is, that the agency is "following an 'impermissible practice' in evaluating FOIA requests, and that it will suffer 'continuing injury due to this practice.'" *Id.* at 491 (quoting *Better Gov't Ass'n v. Dep't of State,* 780 F.2d 86, 91 (D.C. Cir. 1986)). This exception applies only to a "failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials." *Id.*

Plaintiffs argue that DOJ's policy of allowing an FBI official to classify a record after receiving a FOIA request violates the terms of Executive Order 12958. *See* Compl. ¶¶ 138–139.

Under the Executive Order, classification of previously undisclosed information after it has become the subject of a FOIA request requires classification "on a document-by-document basis with the personal participation or under the direction of the agency head, the deputy agency head, or the senior agency official designated under section 5.6." Exec. Order No. 12958, § 1.8(d), 60 Fed. Reg. 19,825, 19,838 (Apr. 17, 1995). In 1999, the Assistant Attorney General for Administration, who sits within JMD and whom the parties agree is the relevant "senior agency official," delegated his § 1.8(d) authority to the "Chief of the Document Classification Unit" of the FBI, requiring "that the sub-delegee keep the Assistant Attorney General for Administration 'apprised in a timely manner of any action taken under this authority.'" *See Mobley*, 806 F.3d at 585 (quoting Order, Stephen R. Colgate, Assistant Att'y Gen. for Admin., Just. Mgmt. Div., U.S. Dep't of Just. (Dec. 29, 1999)).

Plaintiffs argue that this sub-delegation contravenes the delegation procedures of the Executive Order and represents an ongoing failure to abide by the terms of the FOIA. Cross Mot. Summ. J. at 9–10. But Plaintiffs' argument is plainly foreclosed by the D.C. Circuit's decision in *Mobley*, which clarifies that "[s]ub-delegation to a subordinate federal official is presumptively permissible, absent affirmative evidence in the original delegation of a contrary intent." 806 F.3d at 585. Under the Executive Order, classification after the receipt of a FOIA request "is permissible so long as a designated official . . . personally participate[s] in the classification decision, or the official deciding to classify a document . . . act[s] under the direction of the designated official." *Id.*[2] The *Mobley* court determined that the 1999 sub-delegation order's "ongoing notification

---

[2] *Mobley* interpreted § 1.7(d) of Executive Order 13526, the parallel successor provision to § 1.8(d) of Executive Order 12958.

requirement" ensured that classification decisions are still "made 'under the direction' of the Assistant Attorney General for Administration." *Id.*

Plaintiffs cite the JMD's failure to find records responsive to National Security Counselors' 2013 FOIA request for all records "documenting instances in which the Assistant Attorney General for Administration . . . was apprised of actions taken under authority delegated to the Federal Bureau of Investigation" as evidence that such notification did not occur.  ECF No. 91-7, Ex. G. But "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  "After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Id.*  Moreover, a declaration from Michael Seidel, the Chief of the Record/Information Dissemination Section of the FBI, avers that "from years 2004 to 2017, the FBI submitted yearly reports to DOJ . . . appraising them of all classifications and declassification decisions made by the agency, in compliance with the Delegation Order dated December 29, 1999." Seidel Decl. ¶ 8, ECF No. 97-3.  In the absence of evidence of bad faith or other circumstances sufficient to overcome an adequate agency affidavit, the court declines to discredit the Seidel Declaration and infer that the agency failed to comply with the notification requirement.  *See Iturralde*, 315 F.3d at 315.

Plaintiffs also point to a 1972 DOJ guidelines document that they argue constitutes "affirmative evidence of a historic understanding that classification authority is nondelegable." Pls.' Cross Mot. Summ. J. at 10–11.  But that policy was no longer in effect at the time of the 1999 sub-delegation order and Plaintiffs offer no basis for this court to assume that "a direct line of evolution can be drawn between [this policy] and Executive order 13,526." *Id.* at 11; *see Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 479 (D.C. Cir. 1980) (explaining that the 1972 memorandum

was issued pursuant to an Executive Order that was supplanted before the events in this case). Plaintiffs' citation to this 1972 policy therefore cannot displace *Mobley*'s binding interpretation of the Executive Order and the 1999 sub-delegation order.

Because Plaintiffs fail to demonstrate that DOJ was following an impermissible policy or practice in classifying the FISA Alert after receiving Crisman's original FOIA request, Plaintiffs' claims as to Counts 12, 13, and 15 are moot.

## IV.     CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Renewed Motion for Summary Judgment, ECF No. 89, and DENY Plaintiffs' Cross Motion for Summary Judgment, ECF No. 92. A separate order will accompany this Memorandum Opinion.

Date:  February 3, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge